**Ruth HANSEN, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 84–2366.

United States Court of Appeals, Tenth Circuit.

Feb. 5, 1986.

Michael E. Bulson of Utah Legal Services, Inc., Ogden, Utah, for plaintiff-appellant.

Jeffrey C. Blair, Asst. Regional Atty., Dept. of Health and Human Services, Denver, Colo. (Brent D. Ward, U.S. Atty., and Gregory C. Diamond, Asst. U.S. Atty., Salt Lake City, Utah and Ronald S. Luedeman, Regional Atty., and Thomas A. Nelson, Jr., Deputy Regional Atty., Dept. of Health and Human Services, Denver, Colo., with him, on brief), for defendant-appellee.

Before LOGAN, SETH and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Ruth Hansen filed for disability insurance benefits, supplemental security income benefits, and widow's benefits, under the Social Security Act. Her claims were denied by the Social Security Administration following a hearing before an administrative law judge (ALJ), and Hansen then brought this action under 42 U.S.C. § 405(g) (1982). The district court affirmed the administrative determinations. Hansen appeals, contending that the denial of her claim for widow's benefits is not supported by substantial evidence, and that the ALJ denied her claims for disability benefits on the basis of an invalid regulation. We affirm in part and reverse in part.

Hansen was born in 1931. She has an I.Q. of 72 and has been diagnosed as suffering from paranoid schizophrenia and depression. At the behest of the ALJ, Hansen was evaluated by a psychiatrist, Dr. Taylor, shortly after her hearing. The ALJ recounted the evaluation as follows:

"The claimant described hallucinations, delusions, fears and suspicions which Dr. Taylor felt were chronic and seemed to be active at the time. She was described as having moderate to considerable impairment at times in her ability to understand, carry out, and remember instructions, and her ability to respond to supervisors, co-workers, and customary work pressures in a work setting."

Rec., vol. II, at 13. Dr. Taylor concluded: "I feel prognosis for improvement is poor." *Id.* at 309.

Hansen's prior employment has been sporadic. The record reveals that since 1974 she has worked three months as a dishwasher, four months in a hospital laundry, and other similar short periods as a maid, dishwasher, or laundress. *Id.* at 115. At the time of her hearing, she was employed sorting clothes at a sheltered workshop, earning $1.65 an hour. Her performance there was apparently marginal; she testified that she had been told she would be let go if her work did not improve. *Id.* at 64.

I.

WIDOW'S BENEFITS

The ALJ denied Hansen's application for widow's benefits under 42 U.S.C. §§ 402(e), 423(d)(2)(B) (1982). On appeal, Hansen argues that this decision is not supported by substantial evidence. We affirm.

The Social Security Act's criteria governing the award of disability benefits to a widow are more restrictive than the standards applied to a wage earner. *See Smith v. Schweiker*, 671 F.2d 789, 790–91 (3d Cir.1982), *Rodriguez v. Secretary*, 647 F.2d 218, 219–20 (1st Cir.1981). A wage earner need only show an impairment that prevents *substantial* gainful activity, which can be established by considering such non-medical factors as age, education, and work experience. *See Smith*, 671 F.2d at 791. A widow is disabled for purposes of the Act if she is unable to perform *any* gainful activity, 42 U.S.C. § 423(d)(2)(B), based on medical factors alone, 20 C.F.R. § 404.1577 (1985). The regulations provide that an impairment is disabling when it "has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any

impairment shown there." 20 C.F.R. § 404.1578(a)(1).[1]

Hansen contends that she meets the criteria for a functional psychotic disorder listed in Appendix 1 at section 12.03. This section applies to mood disorders, schizophrenias, and paranoid states, and requires:

"A. Manifested persistence of one or more of the following clinical signs:

1. Depression (or elation); or

2. Agitation; or

3. Psychomotor disturbances; or

4. Hallucinations or delusions; or

5. Autistic or other regressive behavior; or

6. Inappropriateness of affect; or

7. Illogical association of ideas;

"B. Resulting persistence of *marked* restriction of daily activities and constriction of interests and seriously impaired ability to relate to other people."

20 C.F.R. § 404, subpt. P., app. 1, § 12.03. The ALJ noted Hansen's diagnosis of schizophrenia, her depression, and her hallucinations. Nonetheless, the ALJ apparently concluded that Hansen did not satisfy part B of section 12.03, stating that "while she has some restriction of daily activities this does not represent persistent marked restriction of daily activities and she has only moderate constriction of interests." Rec., vol. III, at 369.

■ The ALJ's finding that Hansen has not met the criteria of section 12.03(B) will be upheld if it is supported by substantial evidence. Evidence is substantial if it is more than a mere scintilla, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir.1983). In this case, the record contains evidence that Hansen bathed daily, and kept herself neat and clean, that she walked to work at the sheltered workshop and worked there eight hours a day, that she got along with her coworkers there and had a friend with whom she ate lunch, that she watched television, occasionally took her granddaughters to the movies and had other contacts with her family, that she could prepare her own meals and go shopping, and that she attended church on Sundays. Although we view the question as a close one, we conclude that this evidence is adequate to support the ALJ's determination. Accordingly, the denial of Hansen's claim for widow's benefits is affirmed.

II.

THE DISABILITY DETERMINATION

The regulations applicable to disability determinations[2] set forth a five-step sequential process for evaluating disability claims. *See generally Tillery v. Schweiker*, 713 F.2d 601, 602 (10th Cir.1983). If the ALJ finds that a claimant is not disabled at any step, the evaluation process stops and the subsequent steps are not considered. *See id.*

■ In this case the ALJ made his decision at step two, the "severity" step, which provides that a claimant must have an impairment or combination of impairments "which significantly limits [the] physical or mental ability to do basic work activities" *without considering the claimant's age, education, and work experience. See* 20 C.F.R. §§ 404.1520(c), 416.920(c). This step has become the point at which a rising percentage of disability claims are denied,[3] and is the subject of increasing judicial scrutiny and criticism. Hansen contends on appeal that the regulation as applied by

---

1. Hansen does not challenge the validity of the regulations applicable to determining eligibility for widow's benefits.

2. The law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental income benefits, and the claims are thus treated together. *See*

*Fulton v. Heckler,* 760 F.2d 1052, 1053 n. 1 (10th Cir.1985).

3. In *Baeder v. Heckler*, 768 F.2d 547, 552 (3d Cir.1985), the court noted statistics showing that in 1975 only 8.4% of claimants were denied disability based on medical factors alone; whereas in 1982, 40.3% were so denied.

the Secretary is invalid because it conflicts with the Act.[4]

Our review of regulations promulgated by the Secretary is limited to determining whether they are arbitrary and capricious, or inconsistent with the Social Security Act. *See Heckler v. Campbell,* 461 U.S. 458, 468, 103 S.Ct. 1952, 1958, 76 L.Ed.2d 66 (1983). Accordingly, we turn first to the language of the Act, which defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...."[5] 42 U.S.C. § 423(d)(1)(A). The Act further provides that

> "an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments *are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work* which exists in the national economy...."

42 U.S.C. § 423(d)(2)(A) (emphasis added).

■ There can be no serious dispute that under the plain language of the Act, the severity of an impairment is to be measured by its effect on a claimant's ability to work, not solely by reference to medical standards. *See, e.g., Yuckert v. Heckler,* 774 F.2d 1365, 1368 (9th Cir.1985); *Baeder v. Heckler,* 768 F.2d 547, 551 (3d Cir.1985); *Stone v. Heckler,* 752 F.2d 1099, 1104 (5th Cir.1985). In assessing disability, the Secretary is mandated by the statutory language to consider a claimant's ability both to perform past work and, given individual

vocational factors, to engage in other work. Under the regulation at issue, the Secretary does not undertake this individualized determination when a finding is made, based on medical factors alone, that an impairment is not severe. The regulation on its face thus conflicts with the statutory directive. Moreover, it is inconsistent with the holding in this and every other circuit that once a claimant has shown he can no longer do his past work, the burden shifts to the Secretary to show "that the claimant retains the capacity to perform an alternate work activity and that this specific type of job exists in the national economy." *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984); *see also Johnson v. Heckler,* 769 F.2d 1202, 1210 (citing cases), *reh'g en banc denied by equally divided court,* 776 F.2d 166 (7th Cir.1985).

The severity regulation can be reconciled with the Act and the case law only if it is used as a preliminary screening device to deny a claimant with impairments so minimal that they could under no circumstances have a serious impact on the ability to work. Indeed, in concluding that a finding of no disability may be made at step two of the sequential evaluation process, Congress has recently construed the severity regulation as appropriate only when "the medical severity of [the] impairment or combination of impairments is *slight enough to warrant a presumption,* even without a full evaluation of vocational factors, that the individual's ability to perform [substantial gainful activity] is not seriously affected." H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 30, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3080, 3088 (emphasis added). Those circuits that have considered the regulation have either construed it to embody

---

4. We here note and reject the Secretary's contention that we are precluded from considering this issue because Hansen failed to raise it before the district court. This case presents a legal question of public importance which we should resolve in the interests of justice and judicial economy. *See Yuckert v. Heckler,* 774 F.2d 1365, 1367 (9th Cir.1985); *see also Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 836 (1976).

5. Under the regulations, employment in a sheltered workshop is not considered substantial gainful employment when, as here, the claimant earns less than $300 per month. *See Van Horn v. Heckler,* 717 F.2d 1196, 1199 (8th Cir.1983); 20 C.F.R. §§ 404.1574(b)(4)(vi), 416.974(b)(4)(vi).

the de minimis standard articulated in the legislative history, *see, e.g., Farris v. Secretary*, 773 F.2d 85, 89 (6th Cir.1985); *Stone*, 752 F.2d at 1101; *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984); *Brady v. Heckler*, 724 F.2d 914, 919–20 (11th Cir. 1984); *Chico v. Schweiker*, 710 F.2d 947, 954–55 & n. 10 (2d Cir.1983), or have invalidated the regulation because it is inconsistent with the Act as applied by the Secretary, *see, e.g., Yuckert*, 774 F.2d at 1370; *Johnson*, 769 F.2d at 1213; *Baeder*, 768 F.2d at 553.

The Secretary's position in defense of the severity regulation has been at best equivocal and at worst disingenuous. The Secretary has not stated to this court that she will apply in total the de minimis standard required by the relevant court decisions and set out by Congress in the legislative history quoted above. In the absence of such a declaration, her assertion that the legislative history validates her use of the regulation is patently without merit.

■ In a supplemental brief on appeal, the Secretary urges that the regulation is valid in light of the promulgation of Social Security Ruling (SSR) 85–28.[6] This SSR states that an impairment is not severe under step two if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered...." SSR 85–28, at 5–6. Although this construction appears similar to the de minimis standard in *Stone*, 752 F.2d at 1101, and *Brady*, 724 F.2d at 920, it does not adopt the presumption set out by Congress on which the propriety of the de minimis standard is grounded. Because the Act requires the Secretary to determine disability by assessing an impairment in terms of its effect on the ability to work, a step which eliminates this evaluation is valid only when the impairment is so slight that it can be *presumed* to have no serious effect under any circumstances. The Secretary's elimination of the presumption from *Stone's* de minimis standard is therefore significant.

A prior ruling, SSR 82–56, which has not been withdrawn, states that "an impairment will not be considered to be severe even though it may prevent the individual from doing work that the individual has done in the past." The proposed SSR 85–28 states that if a person "cannot perform his or her past relevant work *because of the unique features of that work*, a denial at the 'not severe' step of the sequential evaluation process is inappropriate." SSR 85–28, at 8 (emphasis added). An impairment that prevents a claimant from performing past work, whether or not that work is unique, is clearly too severe to permit the required presumption that it could never interfere with any substantial gainful employment.[7] The Secretary's position thus remains at odds with our holding that a showing of inability to do past work shifts the burden to the Secretary to perform the individualized assessment that step two avoids. Moreover, the present case is a perfect illustration that the Secretary is wording her proposed ruling so as to give the appearance of complying with the de minimis standard while at the same time including language under which a stricter standard is actually applied. With an I.Q. of 72,[8] the mental diagnosis described above, and an ability to barely cope in the structured environment of a sheltered workshop, Hansen hardly fits the category of a claimant with an impairment so slight that it can be presumed not to impair

---

6. We note the uncertainty as to whether this ruling has been published at this time. Although an SSR is not effective until publication, the Secretary apparently anticipates that it will be published in the form in which it was presented to this court. Accordingly, we will address the Secretary's arguments in light of the proposed SSR.

7. In this case, the ALJ made no determination that Hansen is able to perform her past work.

8. Under the regulations, Hansen would be considered disabled if she had an I.Q. of 60 to 69 "and a physical or other mental impairment imposing additional and significant work-related limitation ·of function." 20 C.F.R. § 404, subpt. P, app. 1, § 12.05(C) (1985).

her ability to engage in substantial gainful activity.

We must therefore consider how best to remedy the Secretary's apparent continuing intent to apply the step two severity regulation in a manner that conflicts with the Act and the controlling case law. We decline to follow those courts which have construed the regulation to embody a de minimis standard and have reversed and remanded disability determinations which do not clearly accept and apply this construction. Unfortunately, the Secretary has a history of disregarding those controlling court rulings with which she disagrees. *See, e.g., Stone,* 752 F.2d at 1103, 1106. Proposed SSR 85–28, coupled with SSR 82–56, displays the Secretary's intent to pay mere lip service to the de minimis standard, thus forcing a claimant to pursue a judicial appeal to obtain a disability determination properly made under the applicable law. We believe this imposes an unnecessary hardship on claimants, wastes judicial resources, and works a serious injustice on those whose legitimate claims to disability benefits are improperly denied administratively and who do not appeal. Accordingly, we hold along with the Third, Seventh, and Ninth Circuits that the step two severity regulations, 20 C.F.R. §§ 404.1520(c), 416.-920(c) (1985), are invalid. We reverse the affirmance of the denial of disability benefits and remand to the district court with instructions to remand the case to the Secretary to redetermine Hansen's disability claims without using step two of the sequential evaluation process.

Affirmed in part, reversed in part, and remanded to the Secretary for further proceedings consistent with this opinion.